**Affirmed and Opinion Filed March 27, 2024**



In The
## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-22-00818-CV

## IN THE MATTER OF CHARLIE JAIMES, DECEASED

**On Appeal from the 382nd Judicial District Court**
**Rockwall County, Texas**
**Trial Court Cause No. 1-18-0209**

## MEMORANDUM OPINION
Before Justices Nowell, Goldstein, and Breedlove
Opinion by Justice Goldstein

Appellant, the City of Dallas, appeals a trial court judgment in favor of appellee Elvia Jaimes, as the claimant in a worker's compensation claim against the City. In three issues, the City asserts that the trial court erred (1) by denying the City's limitations defense, (2) because the evidence conclusively established that Elvia[1] failed to timely file a claim for death benefits, and (3) because the evidence conclusively established that the City's claims-servicing contractor timely contested Elvia's claim for death benefits. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

---

[1] We refer to appellee by her first name as she shares a surname with the decedent.

## BACKGROUND

Elvia's husband Charlie worked as a firefighter for the City, a self-insured worker's compensation provider. In 2011, Charlie was diagnosed with glioblastoma, a type of brain cancer. He filed a claim for occupational disease injury with the Department of Insurance, Division of Workers' Compensation (Division), which the City denied.

On June 2014, Charlie died as a result of the cancer, and Elvia filed a claim for death benefits in April 2016. The City disputed Elvia's claim in part on the ground that she did not bring the claim within one year of Charlie's death. Elvia responded that the City waived that defense by failing to timely assert it. The contested case was tried before an administrative law judge (ALJ).

On October 3, 2017, the ALJ issued his decision and order. The ALJ found in favor of Elvia on the compensability of Charlie's occupational injury, but in favor of the City on the claim for death benefits. Both parties appealed to the Division. On January 10, 2018, the Division notified the parties of its decision adopting the ALJ's decision and order. Both parties filed lawsuits seeking judicial review of the appeals panel's decision, and the two lawsuits were consolidated.

Elvia filed her original petition on February 23, 2018, averring the ALJ and the appeals panel wrongly denied her claim for death benefits. In the petition, Elvia incorrectly listed the City of Rockwall as the defendant. However, attached to the petition was the ALJ's decision and order and the appeals panel's decision adopting

–2–

same. Elvia's process server mailed the original petition and citation directed to the City's registered agent, at the Marilla address for Dallas City Hall. On February 27, 2018, Elvia filed her first amended petition, which still incorrectly listed the City of Rockwall as the defendant, failed to include the attachments, but again listed the City of Dallas address for service. Elvia's second amended petition, filed on March 8, 2018, corrected the mistake and listed the City as the defendant.

The City filed an answer, asserting among other things the affirmative defense of limitations, as well as a motion for summary judgment on the ground that Elvia's claim was filed outside the forty-five-day limitations period. The City acknowledged that Elvia's original petition was timely, but argued that the original petition misidentified the City of Rockwall as the defendant. Notwithstanding the correct identification of the defendant in the second amended petition, the City contended it was untimely because of the misidentification and therefore the limitations period was not tolled. Elvia responded that her second amended petition related back to the filing of her original petition because her mistake in identifying the correct defendant was a misnomer, not a misidentification. The trial court denied the City's motion.

On May 21, 2021, the City nonsuited its claim for judicial review, and on April 11, 2022, the parties proceeded to jury trial on Elvia's claim for death benefits. Both parties submitted a proposed jury charge prior to trial. The City's proposed charge included Question 4, which asked:

Did Elvia Jaimes file a lawsuit against City of Dallas not later than the 45th day after the date on which the Texas Department of Insurance, Division of Workers' Compensation mailed Elvia Jaimes the decision of the Texas Department of Insurance, Division of Workers' Compensation Appeals Panel?

At the charge conference, the trial court declined to include Question 4 in the charge, explaining its decision as follows:

THE COURT: Okay. As it relates to question number four, the Court is not submitting that to the jury because I don't think there's a disputed fact issue for them to decide. That issue has been addressed in an extensive Motion for Summary Judgment, and I think there's no question that the lawsuit was filed. It named the wrong defendant at one time and it was later cured, naming the right defendant. So I think it's a question of law, which you do have set up for an appeal, if necessary, as a result of my ruling on the Motion for Summary Judgment.

The case was therefore submitted to the jury on three questions:

(1) Did Elvia Jaimes file a claim for death benefits with the Texas Department of Insurance, Division of Workers' Compensation within one year of June 9, 2014, the date of Charlie Jaimes' death?

(2) Did Elvia Jaimes have good cause for delay in filing a claim for death benefits with the Texas Department of Insurance, Division of Workers' Compensation?

(3) Did City of Dallas fail to contest Elvia Jaimes' claim for death benefits within 60 days after the date on which the City's claims servicing contractor received notification of the death resulting from an injury to Charlie Jaimes?

The jury answered "No" to Question 1 and "Yes" to Questions 2 and 3. The trial court entered judgment on the verdict in Elvia's favor. The City filed a motion for new trial, complaining of the trial court's refusal to include Question 4 in the charge. The trial court did not rule on the motion for new trial, and it was denied by operation of law. *See* TEX. R. CIV. P. 329b(c). This appeal followed.

–4–

**I.     LIMITATIONS**

In its first issue, the City asserts that the trial court erred by "not granting [its] affirmative defense of limitations," referring to the forty-five-day period during which a claimant must seek judicial review of a worker's compensation denial. *See* TEX. LAB. CODE ANN. § 410.252(a). The City concedes that Elvia timely filed her original petition but erroneously listed the City of Rockwall as Charlie's employer. The City argues that this was a misidentification, which does not toll the limitations period. Therefore, according to the City, by the time Elvia filed a petition correctly naming the City as the proper defendant, the limitations period had expired. Elvia responds that the clerical mistake[2] in naming the proper defendant was a misnomer and not a misidentification, and thus the limitations period was tolled.

We first address Elvia's waiver argument that the City failed to preserve this complaint for appeal because the City's opening brief does not properly assign error to any specific ruling in which the trial court failed to "grant" the City's limitations defense. In its reply brief, the City argues that it preserved both the trial court's denial of the City's motion for summary judgment and the trial court's refusal to include Question 4, the City's proposed jury question on limitations, in the jury charge.

---

[2] Elvia explained to the trial court that at the time of initial draft, "the Original Petition correctly named the CITY OF DALLAS as the Defendant; however, the county of suit erroneously listed DALLAS COUNTY (the correct Venue was Rockwall County). Upon review, this error in Venue was found and in the process of correcting the Venue from DALLAS to ROCKWALL, the other references to DALLAS throughout the Original Petition were inadvertently changed to Rockwall. This was purely a clerical error and the intent was at all times to sue the CITY OF DALLAS, not the City of Rockwall."

### A.     Preservation of Summary Judgment Denial

The City asserts that the trial court erred in denying the City's pretrial motion for summary judgment on limitations. Elvia argues that the order is not reviewable on appeal. We agree with Elvia. "The general rule is that a denial of a summary judgment is not reviewable on appeal." *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996). "This is because a denial of a summary judgment is not a final judgment." *Id.*; *see also Reese v. Duncan*, 80 S.W.3d 650, 665 (Tex. App.—Dallas 2002, pet. denied) (summary-judgment denial not reviewable on appeal where trial court denied the motion and the case was later tried on the merits).

We overrule the City's first issue to the extent the City seeks review of the trial court's order denying the City's motion for summary judgment on limitations.

### B.     Waiver

The City next asserts that the trial court erred in refusing to include Question 4 in the jury charge. Elvia contends that the City failed to preserve this issue for appeal because the City's opening brief did not include an argument expressly assigning error to this ruling as a ground for reversal. Although Elvia asserts the City waived this complaint by failing to preserve error, the gravamen of her argument is based on alleged inadequate briefing. The Texas Rules of Appellate Procedure recognize a distinction between these two types of waiver. *See* TEX. R. APP. P. 33.1(a) (preservation of error); TEX. R. APP. P. 38.1(f), (i) (briefing requirements).

"To preserve error for a no evidence or a matter of law point of error, the appellant *must* raise the issue through one of the following: (1) a motion for directed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the question to the jury; (4) a motion to disregard the jury's answer to a vital fact question; or (5) a motion for new trial. *See United Parcel Serv., Inc. v. Tasdemiroglu*, 25 S.W.3d 914, 916 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (emphasis in original) (citing *Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex. 1991)). Failure to preserve the error by raising it in the trial court precludes appellate review except in very narrow circumstances not applicable here. *See In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003) (explaining that failure to preserve error waives an issue except in cases of "fundamental error" involving subject-matter jurisdiction or in or quasi-criminal juvenile-delinquency cases).

In the case of briefing waiver, we employ a more lenient approach. *See Horton v. Stovall*, 591 S.W.3d 567, 570 (Tex. 2019). Appellate briefs are "meant to acquaint the court with the issues in a case and to present argument that will enable the court to decide the case." *Id.* (quoting Tex. R. App. P. 38.9). Thus, we must liberally, but reasonably, construe briefs such that "the right to appeal is not lost by waiver." *Id.* We also must "reach the merits of an appeal whenever reasonably possible" and strive to avoid resolving cases based on defects of form rather than substance. *Id.*

The record reflects that the City filed a proposed charge that included Question 4, requested its inclusion in the charge at the charge conference, and

–7–

obtained an adverse ruling. The City then filed a motion for new trial asserting that the trial court erred in failing to include Question 4 in the charge. The City thus complied with the rules for error preservation. *See* TEX. R. APP. P. 33.1(a). Therefore, the question is not whether the City preserved this issue for appeal, but whether the City waived this issue due to inadequate briefing.

An appellant's brief should generally identify the ruling, order, or judgment (or any portions thereof) that the appellant complains of on appeal. *See* TEX. R. APP. P. 33.1, 33.8(f), (i). We were not favored with such a brief. Nevertheless, the City's opening brief contains a salient argument as to the merits of its first issue, including a discussion on limitations, misnomer, misidentification, and tolling. Further, once Elvia pointed out the City's failure to assign error to a specific trial-court ruling in her response brief, the City corrected the omission in its reply brief, with appropriate record citations.[3]

In light of our duty to reach the merits of an appeal whenever reasonably possible and to avoid resolving a case based on defects of form rather than substance, we conclude that the City did not waive its first issue for failing to identify the trial court ruling being appealed from in its opening brief. *See Horton*, 591 S.W.3d at 570; TEX. R. APP. P. 38.9.

---

[3] It was not asserted and we do not find that the City raises this issue for the first time in its reply brief.

## C.    Charge Error

We now turn to whether the trial court erred in denying the City's request to include Question 4 in the charge. A trial court must submit "such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX. R. CIV. P. 277. Likewise, a trial court must submit in its charge to the jury all questions, instructions, and definitions that are raised by the pleadings and the evidence. *See* TEX. R. CIV. P. 278. The parties have the right to be judged by a jury properly instructed in the law. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex. 2000). A trial court may refuse to submit a question to the jury only if there is no evidence to support the submission. *See Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992).

We review a trial court's decision to give or refuse a particular question or instruction in the jury charge for abuse of discretion. *Namdarkhan v. Glast, Phillips & Murray, P.C.*, No. 05-18-00802-CV, 2020 WL 1969507, at *4 (Tex. App.—Dallas Apr. 24, 2020, pet. denied). "This discretion yields only to the requirements that the questions submitted must: (1) control the disposition of the case; (2) be raised by the pleadings and the evidence; and (3) properly submit the disputed issues for the jury's determination." *Id.* (citing TEX. R. CIV. P. 277, 278; and *Bexar Cnty. Appraisal Dist. v. Abdo*, 399 S.W.3d 248, 257–58 (Tex. App.—San Antonio 2012, no pet.)). "Whether a charge submits the controlling issues in a case, in terms of proper theories of recovery or defense, however, is a question of law we review de

novo." *Id.* (citing *Hamid v. Lexus*, 369 S.W.3d 291, 295 (Tex. App.—Houston [1st Dist.] 2011, no pet.); and *Fin. Ins. Co. v. Ragsdale*, 166 S.W.3d 922, 926 (Tex. App.—El Paso 2005, no pet.)). Evaluating the existence of reversible error in a jury charge requires that we consider the pleadings, the evidence presented at trial, and the charge in its entirety. *Id.* (citing *Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 653 (Tex. App.—Dallas 2002, pet. denied)). "We reverse a judgment for charge error only if the error probably caused the rendition of an improper judgment or probably prevented a meaningful appellate review." *Id.* (citing TEX. R. APP. P. 44.1 and *Thota v. Young*, 366 S.W.3d 678, 680 (Tex. 2012)).

The elements of the affirmative defense of limitations include "when a cause of action accrued and that the plaintiff did not file suit within the limitations period." *Sutton v. Sheikh*, No. 05-12-01168-CV, 2013 WL 4041552, at *2 (Tex. App.— Dallas Aug. 9, 2013, no pet.) (mem. op.). The City asserts that section 410.252 of the Labor Code provides the relevant limitations period in this case, to wit:

> A party may seek judicial review by filing suit not later than the 45th day after the date on which the division mailed the party the decision of the appeals panel. For purposes of this section, the mailing date is considered to be the fifth day after the date the decision of the appeals panel was filed with the division.

Tex. Lab. Code Ann. § 410.252(a). We assume, without deciding, that section 410.252(a) is a statute of limitations. Thus, in order to be entitled to a jury question on the City's limitations defense, the City would have needed to introduce some evidence of (1) the mailing date of the appeals panel's decision to support the

–10–

accrual-date element; and (2) the filing date of Elvia's suit for judicial review to support the late-filing element. *See Elbaor*, 845 S.W.2d at 243.

At trial, the City offered the testimony of Brent Cox, the City's claims manager. Cox testified about numerous topics, including Charlie's cancer diagnosis, the handling of Charlie's worker's compensation claim and Elvia's claim for death benefits, the denial of the death-benefits claim, and the administrative appeals filed by both Elvia and the City. Cox did not testify, however, about the date on which the final decision of the appeals panel was mailed to Elvia or the date on which Elvia filed this suit for judicial review. The only other witness who testified at trial, Elvia, also did not testify about these issues.

In its brief before this Court, the City cites to the clerk's record as evidence of the appeals panel's decision and the filing date of Elvia's lawsuit. The clerk's record contains the parties' summary-judgment motions and responses, including a copy of the appeals panel's decision. However, the appeals panel's decision was not made part of the trial record as either evidence to be considered or through judicial notice of the court's file. In order to determine whether the trial court erred in refusing to include a question in the jury charge, we consider only the evidence that was admitted at trial. *See Elbaor*, 845 S.W.2d at 243; *Namdarkhan*, 2020 WL 1969507, at *4; *see also Celadon Trucking Services, Inc. v. Titan Textile Co., Inc.*, 130 S.W.3d 301, 307 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) ("On appeal from a

trial on the merits, we cannot consider summary-judgment evidence that was not admitted in evidence at trial.").

Similarly, we cannot consider Elvia's original and amended petitions as evidence of the filing date. The City did not offer these pleadings into evidence or request that the trial court take judicial notice of its file. *See, e.g.*, *Evans v. Allen*, 358 S.W.3d 358, 366 n.4 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (trial court may take judicial notice of its file for the purpose of determining whether case was filed outside of limitations period). Rather, the City attempted to make an offer of proof, which included Elvia's original, first amended, and second amended petitions, each bearing a filing stamp by the trial court clerk. The purpose of an offer of proof is to preserve error when a trial court erroneously excludes evidence. *See* TEX. R. EVID. 103(a) ("A party may claim error in a ruling to . . . exclude evidence only if the error affects a substantial right of the party and . . . a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context."). Here, the trial court did not make an evidentiary ruling that would trigger the need for an offer of proof because City did not offer the pleadings into evidence. On the contrary, the City's counsel explained that he was not offering the pleadings "into evidence," but rather "just to preserve the record." Because Elvia's pleadings were not offered into evidence and the City does not claim any error with respect to their exclusion from the evidence, we cannot consider the pleadings for the purpose

–12–

of determining whether the trial erred in refusing to include Question 4 in the jury charge.

We conclude that the trial record contains no evidence of either element of the City's limitations defense. Therefore, the trial court did not err in refusing to include Question 4 into the jury charge.[4]

## D. Tolling

Even if the trial court erred in refusing to include Question 4 in the charge, the result would not change. We may reverse a trial court's judgment on the basis of charge error only if the error resulted in an improper judgment or prevented meaningful appellate review. *Namdarkhan*, 2020 WL 1969507, at *4.

We discern that the central issue the City would have us resolve is whether Elvia's original petition contains a misnomer or a misidentification. "A misnomer differs from a misidentification." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 594 (Tex. 2017) (quoting *In re Greater Houston Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 325 (Tex. 2009) (per curiam)). "Misidentification—the consequences of which are generally harsh—arises when two separate legal entities exist and a plaintiff mistakenly sues an entity with a name similar to that of the correct entity." *Id.* (quoting *In re Greater Houston*, 295 S.W.3d at 325). If a "plaintiff is mistaken

---

[4] We note again that the trial court, during the charge conference, advised there was no fact issue for the jury to decide; rather, limitations was addressed as a matter of law relative to the filing date of the petition, the error in naming the City of Dallas and the curative amended petition. We address misnomer versus misidentification below.

as to which of two defendants is the correct one and there is actually existing a corporation with the name of the erroneously named defendant (misidentification), then the plaintiff has sued the wrong party and limitations is not tolled." *Id.* (quoting *Enserch Corp. v. Parker*, 794 S.W.2d 2, 5 (Tex. 1990)). An exception exists to the rule that tolling does not apply in cases of misidentification: "The statute of limitations will be tolled in misidentification cases if there are two separate, but related, entities that use a similar trade name and the correct entity had notice of the suit and was not misled or disadvantaged by the mistake." *Flour Bluff Indep. Sch. Dist. v. Bass*, 133 S.W.3d 272, 274 (Tex. 2004).

In contrast to misidentification, a "misnomer occurs when a party misnames itself or another party, but the correct parties are involved." *In re Greater Houston*, 295 S.W.3d at 325. "The courts of this state generally allow parties to correct a misnomer if it is not misleading." *Id.* "The main distinction between misidentification and misnomer is whether the correct party received notice of the suit." *Pierson v. SMS Fin. II, L.L.C.*, 959 S.W.2d 343, 347 (Tex. App.—Texarkana 1998, no pet.). "The main reason that the statute of limitations is tolled in cases of misnomer is that the party intended to be sued has been served and put on notice that he is the intended defendant." *Id.*

Here, Elvia's original petition lists the City of Rockwall as the defendant. However, the citation, although listing the City of Rockwall, was directed to and served upon the City's registered agent at the address for Dallas City Hall, 1500

Marilla, 5D South. The citation included a copy of the petition, attached to which were (1) the ALJ's decision and order and (2) the notice of the appeals panel's decision. Both of these attachments clearly identified the City as the party from whom Elvia sought relief. Thus, although Elvia listed the wrong city as the defendant, the "correct parties [were] involved" and "the party intended to be sued [was] served and put on notice that [it was] the intended defendant." *See In re Greater Houston*, 295 S.W.3d at 325; *Pierson*, 959 S.W.2d at 347. As such, Elvia's mistake constituted a misnomer, not a misidentification, and her second amended petition related back to the filing of her original petition, which was filed within the limitations period.

We conclude that even if the trial court erred in failing to include Question 4 in the jury charge, such error did not result in the rendition of an improper judgment. We overrule the City's first issue.

## II.    TIMELINESS OF ELVIA'S CLAIM FOR DEATH BENEFITS

In its second issue, the City asserts that the evidence conclusively established that Elvia did not have good cause for untimely filing her claim for death benefits and requests that we reverse and render judgment against Elvia. We construe this as a legal-sufficiency challenge.[5] *See Lua v. Capital Plus Fin., LLC*, 646 S.W.3d 622,

---

[5] Similar to her response to the first issue, Elvia argues that the City also waived this issue because the City's appellate brief does not assign error to a specific ruling by the trial court. We reject Elvia's argument. The City's appellate brief on this issue comports with the arguments it made in its motion for directed verdict. We therefore construe the City's argument as a challenge to the trial court's denial of the City's motion for directed verdict.

632 (Tex. App.—Dallas 2022, pet. denied) ("Evidence is legally insufficient to support a finding when: (1) the record bears no evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) *the evidence conclusively establishes the opposite of a vital fact*." (emphasis added)); *see also Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 929 (Tex. 2009) ("Generally, if an appellate court holds there is legally insufficient evidence to support a judgment after a trial on the merits, the proper disposition is to reverse and render judgment."). "When determining whether legally sufficient evidence supports a finding, an appellate court must consider evidence favorable to the finding if the factfinder could reasonably do so and disregard evidence contrary to the finding unless a reasonable factfinder could not." *Lua*, 646 S.W.3d at 632.

As a preliminary step in the legal sufficiency analysis, we must identify the standard against which the evidence is to be measured. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2002). If an objection to the charge is preserved, we determine whether the charge submitted was erroneous and, if so, measure the sufficiency of the evidence against the correct standard. *See id.* If there has been no objection to the jury charge, however, then the charge actually submitted is the proper measure of the sufficiency of the evidence. *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000).

Here, Question 3 of the jury charge asked whether Elvia had good cause for delay in filing her death-benefits claim. The question included the following instructions:

> A person has "good cause" in this context if he or she has pursued the claim for death benefits with such diligence as a reasonably prudent person would have used under the same or similar circumstances.

> The good cause must have arisen within one year of the date of death and continued until the claim was filed, must have been believe [*sic*] and relied on by the claimant, and must have caused the delayed filing.

The City did not object to these instructions. Indeed, this was the very good-cause language the City urged the trial court to submit in the City's proposed jury charge. We must therefore determine whether there was some evidence to support the jury's affirmative answer to Question 3 based on these instructions.

At trial, Elvia testified regarding the filing of her claim. She stated that before Charlie passed, his worker's compensation claim was being handled by a City employee named Jane Lewis.[6] Elvia testified that Charlie told her that "Jane was going to help him with the – his workman's comp claim." Elvia said that she "couldn't call the City or call Jane because [she was] not an employee" so she did not get involved. It was her understanding that "whatever paperwork needed to be filed with the State for him had been filed by Jane Lewis." After Charlie passed in June 2014, Elvia found workers' compensation documents in his files with a note

---

[6] Brent Cox testified that Lewis was the City's workers' compensation supervisor.

–17–

from Lewis that "she had taken care of this."[7] She testified that nobody from the "insurance carrier or the State of Texas" told her that there was some form that had not been filed. Over the next year, Elvia spoke with other City firefighters and their widows who intimated to her that Charlie's claim was compensable and that she should consult with an attorney. Elvia retained counsel on the one-year anniversary of Charlie's death. On cross-examination, Elvia explained that she did so because she "just thought, it's been a year, [she] need[ed] to do something." She felt like she "was going through a system, like cattle just being corralled." Elvia testified that she did not hire an attorney to file forms for her, but rather because she believed based on her discussions with people in the firefighting community that Charlie's claim should not have been denied. Elvia's testimony was not controverted by any other witness. Elvia stated that it was not until the following year that she learned that her death-benefits claim was never filed.

On this record, the jury could have reasonably concluded that Elvia's mistaken belief—that everything that needed to be filed for her death-benefits claim had been filed—was reasonable based on Charlie's representations and the note from Lewis. The jury could also have reasonably concluded that the good cause

---

[7] Plaintiff's Exhibit 8 of the reporter's record is a January 10, 2012 notice from the Division confirming receipt of Charlie's claim. Affixed to the notice is a post-it note from Lewis stating, "Charlie – This is the claim we filed using the date of injury we discussed – plus copies of the 'injury reports' & turned in – call if you have any questions – Jane."

"continued until the claim was filed" given that Elvia continued to hold her mistaken belief even after the deadline had passed.

Relying on *Texas Employers Insurance Association v. Wermsky*, 349 S.W.2d 90, 94–95 (Tex. 1961), the City argues that any good cause Elvia may have had ended when she hired an attorney because "the attorney is the client's agent, and the attorney's failure to file a claim is attributable to the client." The City also argues, relying on *Texas Employers Insurance Association v. Tobias*, that Elvia's claim of good cause fails as a matter of law because "ignorance of the law is not good cause." 614 S.W.2d 901, 902–03 (Tex. App.—Eastland 1981, writ dism'd).

We reject these arguments. First, our task is to measure the sufficiency of the evidence against the charge that was actually submitted, not the charge that should have been submitted. *See Osterberg*, 12 S.W.3d at 55. The trial court was not asked to include, and therefore did not submit, an instruction regarding principal-agent law or rules about ignorance of the law. Moreover, *Wermsky* and *Tobias* are readily distinguishable, as both cases involved attorneys being hired expressly for the purpose of filing a workers' compensation claim. *See Wermsky*, 349 S.W.2d at 91 (widow of deceased employee hired her estate attorney to handle her husband's workers' compensation claim, which he failed to do despite assuring her several times that he did); *Tobias*, 614 S.W.2d at 902 (widow of deceased employee hired attorney to file husband's workers' compensation claim but never heard from him again despite multiple attempts to reach him by telephone). In contrast, Elvia

testified that she did not hire her attorneys to file her claim because she believed, albeit mistakenly, that everything that needed to be filed already had been.

We conclude that the evidence was legally sufficient to support the jury's answer to Question 2 and that trial court did not err in denying the City's motion for directed verdict as to this question. We overrule the City's second issue.

### III. TIMELINESS OF THE CITY'S DENIAL OF ELVIA'S CLAIM FOR DEATH BENEFITS

In its third issue, the City asserts that the evidence conclusively established that Elvia's death-benefits claim was timely denied. Under the Labor Code, a workers' compensation carrier may waive its defenses, including the defense that the claim was untimely filed, if it fails to contest the claim within sixty days of being notified. *See* TEX. LAB. CODE ANN. § 409.021(c). Because we upheld the jury's rejection of the City's defense under the second issue above, we need not consider whether the City timely raised it. TEX. R. APP. P. 47.1. We overrule the City's third issue.

### CONCLUSION

We affirm the trial court's judgment.

/Bonnie Lee Goldstein/
BONNIE LEE GOLDSTEIN
JUSTICE

220818F.P05

–20–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE MATTER OF CHARLIE
JAIMES, DECEASED

No. 05-22-00818-CV

On Appeal from the 382nd Judicial
District Court, Rockwall County,
Texas
Trial Court Cause No. 1-18-0209.
Opinion delivered by Justice
Goldstein. Justices Nowell and
Breedlove participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee ELVIA JAIMES recover her costs of this appeal from appellant CITY OF DALLAS.

Judgment entered this 27th day of March 2024.